THE STATE for the use of LEMUEL ·C. MORRIS, *v.* JOHN W. CLYMER, CHARLES WARREN and ANDREW J. WRIGHT.

A *venditioni exponas* cannot be admitted in evidence until after the *fi. fa.* which it followed, and upon which it was issued, has been produced in evidence, or its absence has been duly accounted for and has been supplied by the usual and proper proof of its loss and of the contents of it, but which cannot be done by the mere production of the *venditioni.*

The statutory provisions requiring Sheriffs and Constables in this State to return writs of executions, are designed for the benefit of the plaintiffs in them, and to afford them a remedy for the neglect of such officers in that particular ; but they afford no remedy for the defendants in them for such omissions.

But a defendant in an execution whose goods have been sold under it by a Sheriff or Constable in this State, may maintain an action on the official bond or recognizance of such officer and his sureties, to recover any surplus or residue remaining in his hands after satisfying all the executions, levies, liens, and other demands to which the same is legally subject in his hands as such officer.

THIS was an action of debt on a Constable's bond for the use of Morris, against Clymer and the co-defendants as his sureties, to recover a balance of $419.14 which it was alleged remained in his hands as Constable, and was due and payable to Morris after satisfying two executions levied and collected by him at the suit of Isaac C. Harrington against him on the sale of his goods, amounting in the aggregate to $121.34 and costs, and also an execution of William Hines against him for $90 and costs. As one of the grounds of the defence it was shown that there were also other executions at the suit of other parties in the hands of other Constables against him, which had been levied upon his goods, and to which, it was contended, the balance or residue of the proceeds of sale was at the time properly applicable, and which was, or should have been, so applied by him. On the introduction of the records of the latter judgments and executions, the *fi fa.* upon one of them was not and could not be produced in evidence, but the writ of *venditioni exponas* thereon, with a schedule

of the goods and chattels of Morris thereto annexed and appraised at $154.00, which recited that the same had been levied upon by virtue of an execution issued on the judgment for the sum of $29.94 with interest from the date thereof, and the further sum of twenty-five cents costs of suit, and the sum of sixty cents fees on the former execution, in the usual form of such writs, was produced and offered in evidence, as admissible and sufficient without the production of the *fi. fa.* to which it referred and which it pursued.

*Layton*, for the plaintiff: It was not admissible in evidence without the production of the *fi. fa.* and levy on which it was issued.

*Comegys*, for the defendants: They had been surprised by the non-production of the *fi. fa.* and were not aware of its absence until it was called for. But was it indispensably necessary in such a case, and as it then stood before the Court? It was not offered in support of an action on a Constable's bond to recover money from him and his sureties, in which, of course, the strictest and most formal record proof of the judgment and all the proceedings thereon would be required to entitle a plaintiff to maintain such an action. On the contrary, it was offered in defence of a Constable and his sureties in an action on his bond, at the suit of a defendant in another execution in his hands, to recover a residue or balance which he alleged remained in his hands after paying and satisfying the executions and levies then existing against his property and referred to in his declaration. To this the defendants had pleaded that other judgments by other parties had been recovered before other Justices of the Peace against him, on which executions had likewise been issued and levied in the meanwhile by other Constables upon his same goods and chattels, to which the money arising from the sale of them by Clymer under the executions in his hand, was legally subject and properly applicable, as well as to the

two executions particularly referred to by the plaintiff in the declaration, and expressly denied that there was any residue or surplus remaining in his hands arising from the sale of the said goods and chattels by him due and payable to the plaintiff after deducting all the said judgments, executions and levies to which the same was subject, and that the judgment and execution in question with the *venditioni exponas* thereon, the admissibility of which was objected to without the production of the *fi. fa.*, was one of the judgments and executions to which the said goods were so subject, and the surplus or residue of the said money was so applicable; and it was to establish that fact that the writ of *venditioni* without the *fi. fa.* had been offered in evidence. The record of the judgment had been produced and proved and was in evidence. The *fi. fa.* upon it could not then be produced, nor could its loss then be proved. The original writ of *venditioni exponas* issued upon it with the schedule and appraisement of the goods levied on under the *fi. fa.* annexed to it, with all the recitals before stated contained in it, both as to the judgment and the *fi. fa.* thereon, had, however, been produced and proved; the validity of which had not been denied, or questioned on the other side. If the defendants were suing as plaintiffs for the amount of the judgment, *fi. fa.* and *venditioni* in question, and their right to recover it were derivable from and through them, they might very properly be held to strict and positive proof of each in the order in which they occured. But it was pleaded only by way of defence, and that too by sureties, to an action on the constable's bond predicated upon his alleged legal and official liability to pay over and pay back money received by him upon a sale of goods under execution process in his hands, to the owner of the goods, the defendant in such execution process. And the question was, was such strictness of proof necessary in such a case ?

*Layton* replied and contended that the rule was the same in its application to the evidence whether it was presented for or against the defendants.

*By the Court.* The *venditioni exponas* offered in evidence cannot be admitted until after the writ of *fi. fa.*, which it followed and upon which it was issued, has been produced and put in evidence, or its absence has been duly accounted for and it has been supplied by the usual and proper proof of its loss and contents, which cannot be done by the mere production of the *venditioni* itself.

*Lawton.* The action could be maintained although it had never been so decided in the courts of this State, but it had been in the courts of other States. The same rules of law which govern sheriffs in the execution of process from the higher courts, apply to constables in the execution of process from justices of the peace, except where some statute intervenes. *Pixley v. Butts*, 2 *Cow.* 421. But in England sheriffs do not enter into such bonds or recognizances, as they do in this State and in this country. The condition of a sheriff's official obligation in that country is very different and contains no such provision as we find prescribed by law in this state, that he shall well and diligently execute all process which shall duly come to his hands as such officer, and punctually apply and pay over, according to law, all money which he shall receive pursuant to any legal process, but it has been held that an action of trover will lie against a sheriff there at the suit of a defendant in an execution whose goods have been sold on it, to recover the excess or surplus of the sale remaining in his hands after satisfying the execution.—*Sew. on Shffs.* 46 *Law Libr.* 195. *Wats. on Shffs.* 7. *Law Libr.* 14, 15, 16. But in this State and in the States of this country, the defendant in the execution may maintain an action on his bond against the sheriff and his sureties for such an excess or surplus. —14 *Smead & Marsh.* 54. 4 *Littel* 335. 12 *U. S. Dig.* 99, *sec.* 33. 4 *Louis.* 730. 3 *Ohio* 464. 4 *Dana.* 194. 2 *Wend.* 281. 9 *Wend.* 233. 10 *Wend.* 371. 1 *Harr.* 126. 3 *Dev. & Bat.* 55. 5 *Iredell* 357. 2 *McMul.* 327. And if the same rules of law which govern sheriffs govern constables, as he had before stated, in such cases, there could be no doubt of the right of the plaintiff to maintain the action.

*Eli Saulsbury* for the defendants. One of the issues to be tried in the case was whether there had been a legal sale of the goods in question by Clymer, the constable. He denied that there had been such a sale by him, first, because there was no legal process in his hands to warrant the sale. In the case of Hines' judgment and *fi. fa.* and *venditioni* thereon against Morris, there was no inventory and appraisement of the goods seized and levied on under the *fi. fa.*, proved or exhibited on the trial and in the evidence before the jury, as the statute required in every such case. The inventory and appraisement produced and offered in evidence, it was distinctly proved by the officer who made the levy, was the original which he prepared when he made the levy and enclosed in the *fi. fa.* when he returned it to the justice ; but the statute expressly provided and required that whenever it became necessary in any case to issue a *venditioni exponas* to sell property taken in execution under a *fi. fa.*, a copy of the inventory and appraisement of the goods returned with the *fi. fa.* should accompany it, and the meaning of that was that such a copy should be made by the justice who issues the *venditioni*. *Rev. Code* 348, *sec*, 19. And in the second place, because there was no proof before the jury that the sale was advertized by him as required by the statute, which was equally positive in that particular. *Rev. Code* 347, *sec.* 17. And in the next place, because on the writ of *venditioni exponas* upon Hines' judgment, on which the counsel for the plaintiff had said the goods of Morris had been sold, Clymer, the constable, could only sell such of them as were embraced in the inventory which accompanied it, but that inventory included only a part of the goods sold by him, and not the whole of them ; and if he sold under that *venditioni* alone, the goods and chattels generally of Morris, it was a void sale as to every article not included in the inventory which accompanied it.

*Comegys* on the same side. At common law, and under the statutes, a sheriff is not liable to an action at the suit of the plaintiff for not returning a *fi. fa.* *Wats. on shffs.* 82,

198, 64, *sec.* 3.   *Rev. Code* 348, *secs.* 19, 20, 22.   Although sheriffs and constables in this State and country were required by statutory provisions to enter into bonds or recognizances with conditions very different in their tenor and effect from what was usual in England, there was nothing in the legislation of this State or of any other State in the Union, to give a defendant in a writ of execution, any remedy or action on the bond of a sheriff or constable against him and his sureties, to recover the money or any part of it, received or collected by him on such execution. For the statutes on the subject which prescribed the conditions of such bonds and the duties and liabilities of such officers and their sureties, clearly contemplate that they shall be responsible only to the creditor of the defendant in the writ, the plaintiff in the execution, and not to the defendant in it, or any other person.   The officer himself was individually liable at common law and in another form of action to the defendant in the writ and to any other persons for any unlawful act, wrong, injury or injustice done to them in the exeution of it, or in the application or disposition of the money arising from it.   But neither he, nor his sureties were liable on his bond for it, in the present, or any other form of action.   He had glanced at the cases which had been cited on the other side, and although some of them seemed to be imperfectly reported and failed to disclose with sufficient certainty for whose use and benefit the suit had been instituted, he thought it might be fairly inferred from what was stated, even in the cases in which the action was on the official bond or recognizance of the officer for any part of the money received by him on the execution, it was in every instance at the suit of the creditors, and not of the defendant in it.

*Layton,* replied.

*The Court, Gilpin, C. J.,* charged the jury, that the statutory provisions requiring sheriffs and constables in this State to return writs of execution are designed for the

benefit of the plaintiff in them and to afford them a remedy for the neglect of such officers in that particular, but they afford no remedy for the defendants in them for such omissions. That they should be satisfied that the goods and chattels of Morris, the actual plaintiff in the action, were duly levied on under the writ of *fi. fa.* at the suit of *Hines* against him, and that they were afterward sold by Clymer as constable, under the *venditioni exponas* issued upon it. But under it he could only sell the goods levied on under that *fi. fa.* and included and mentioned in the inventory and appraisement which accompanied that *venditioni,* for he could not lawfully sell any other goods under it, and if he sold any other goods under it, his sureties were not liable for the proceeds arising from the sale of such other goods, for in respect to them, Clymer, the constable, would have been a mere trespasser in doing so. The plaintiff's legal right, as well as claim to recover in the action, proceeded entirely on the basis of the several executions and levies at the suit of the several parties shown in the course of the examination of their witnesses by the counsel for the respective parties, to have been then in the hands of Clymer and other constables against him, because it was for a surplus, residue or balance of money arising from the sale of his goods by Clymer under the *venditioni exponas* of Hines against him, which he alleges to be remaining in Clymer's hands as constable, after paying and satisfying in full all the executions and levies to which the proceeds of the sale of the said goods were then subject and applicable, and which balance or surplus he therefore claims was due and payable to him, as the defendant in the execution, and that Clymer, as such constable, and the sureties in his bond, the other two defendants, are liable to him for the amount in the present action upon that instrument. And if the jury were satisfied from the evidence that such was the case, and that the facts which had been proved, show that there was any surplus or residue remaining in the hands of Clymer of the proceeds of the sale of the goods of the plaintiff included in the inventory and appraisement

which accompanied the *venditioni exponas* of Hines against him, on which alone his goods were sold by that officer ( for it had not been shown that any portion of the plaintiff's goods had been sold by him, or even any other constable under any other process ) after paying and satisfying all the other executions and levies thereon, as well as that *venditioni*, to which the same was then subject and applicable in the hands of the other constables, as well as in his own, the plaintiff would be entitled to a verdict for the amount of that surplus or balance so remaining in his hands; and if there was any such residue remaining, it would be for them to ascertain and determine the amount of it from the evidence before them in the case. For a defendant in an execution whose goods have been sold under it by a sheriff or constable in this State, may maintain an action on the official bond of such an officer against him and his sureties to recover any surplus or residue remaining in his hands after satisfying all the executions, levies, liens and other demands to which the same is legally subject in his hands, as such officer. But in the present case, the jury should be further satisfied from the evidence that such surplus arose exclusively from the sale alone of the goods included and mentioned in the inventory and appraisement returned under the levy of the *fi. fa.* and which accompanied the *venditioni exponas* at the suit of Hines against the plaintiff, and on which his goods in question were sold by Clymer the constable. But if they were not so satisfied, then their verdict should be for the defendants.

The defendants had a verdict.